## GRANT vs. THE CITY OF BROOKLYN.

The streets of a great city being in constant use by passengers, during the night as well as the day, if the municipal corporation undertakes a work—such as the construction of a sewer—which necessarily renders the street unsafe for night travel, it is bound to avert the danger to passengers by special precautions, such as signal lights and barriers, and even more than these, should they prove ineffectual.

Where a municipal corporation, in opening a sewer in a street, threw the earth upon the side-walk usually traveled by foot passengers, and left it there during the night, without any signal light or barrier, or protection erected around or near it, to warn or turn passengers away from the danger, and the plaintiff, while passing along the side-walk at night, in consequence of the obstruction, fell into a hole and was injured ; *Held* that the corporation was guilty of negligence to which the plaintiff had not contributed, and was liable for the injury occasioned thereby.

In an action to recover damages for a personal injury resulting in a loss of services, evidence showing how much the plaintiff was earning from his business, or realizing from fixed wages, at the time of the injury, is admissible.

APPEAL by the defendant, from a judgment of the city court of Brooklyn. The action was to recover damages for a personal injury occasioned by the negligence of the defendant.

*J. W. Gilbert,* for the plaintiff.

*John G. Schumaker,* for the defendant.

*By the Court,* BROWN, J. The case of *Hart and Wife* v. *The City of Brooklyn,* (36 *Barb.* 226,) upon which the defendant relies somewhat, has little analogy with the present. It was an attempt to charge the city for a non-feasance—an omission to keep the grate or cover of a vault in the side-walk in repair, by means whereof Margaretta, the plaintiff, was injured. The vault was a private and not a public vault, constructed by and used for the convenience of the owner of the adjoining lot, and this is one of the uses to which the side-walks are appropriated. While passing over the street, upon

the side-walk, the plaintiff stepped upon the grate or cover, which turned aside or gave way under her weight, and caused her to fall into the opening.    The corporation had no notice or suspicion that the cover of the vault was imperfect or out of order, and the case was properly decided upon the principle that a municipal corporation is not liable for damages to an individual injured by an opening in the side-walk, made by the owner of the soil or adjacent land for his own convenience, and protected by a covering imperfectly made, without proof of notice of the insufficiency of the covering, and a neglect thereupon to cause it to be remedied.    The distinction referred to in the opinion between the carriage ways and sidewalks of the streets, and the duties and obligations of the city in regard thereto, was not, I think, material to the decision; nor do I think it has much application to the question of the liability of the defendant in this action.

The injury to the plaintiff resulted primarily from the opening of the sewer in Fulton street, by the water commissioners, who are the agents of, and act for, the city corporation.    The written contract produced and proved by the witness Gamaliel King, does not appear in the case.    But I infer from what the witness, who is one of the water commissioners, said, that it was a contract made with them by Holahan & Cottar, for the construction of the sewer in Fulton street.    The earth from the excavation was thrown upon the side-walk near the corner of Pierrepont street, and caused the obstruction upon the pathway usually taken by foot passengers.    On the night of the occurrence, which was the 1st of November, 1859, the plaintiff with Mr. Perrin, were going from the city hall northerly along Fulton street, on the west side.    When they came to the corner of Pierrepont street, where the obstruction was, there was no signal light and no barrier or protection erected around or near it to warn or turn passengers away from the danger.    Mr. Perrin went on the top of the mound of earth, while the plaintiff kept on the inside of the walk next to the buildings.    The side-walk was

flagged in the center and the flags were covered with the earth of the excavation. When he came within 20 feet of Pierrepont street he could see no light. The pile of earth shut it out, and he could see nothing below his waist, and he felt his way along with his feet. He walked on the strip of ground between the flagging and the fence, and when within about thirty feet from Pierrepont street he fell into a hole formed by the earth of the side-walk caving away. He put his hand against the fence for support, when it gave way also, and he fell into a cellar being excavated upon the adjoining lot and inside the fence. In this fall he sustained the injury complained of. The persons employed in digging the cellar made no excavation outside of the fence until the month of February or March after the accident. It is quite manifest, I think, from this statement, which was not controverted, that the earth thrown upon the side-walk from the sewer, was the leading cause of the injury. True the digging away the ground inside the fence for the cellar, the caving in of that part of the side-walk next the fence, and the falling down of the fence upon which the plaintiff endeavored to support himself, also contributed to the injury. Still it is quite apparent that the plaintiff was led if not forced to grope his way along the inner edge of the side-walk by the incumbrance placed thereon, and the absence of any light to guide or warn him of the danger. The excavation for the cellar and the caving in of a part of the side-walk were contributing but not primary causes of the injury. Had there been no obstruction of the passage way by the earth thrown from the sewer, the defendant would hardly have been open to the charge of negligence. The liability of municipal corporations for injuries resulting from negligence, whether of omission or commission, has been definitively settled by the cases referred to on the plaintiff's points, and the only question in this class of actions open to discussion is whether there is negligence, to which the plaintiff has not contributed, resulting in the plaintiff's injury. The plaintiff was rightfully and properly in

the street. The defendant had undertaken a work which necessarily rendered the street unsafe for night travel. The danger arises from the very nature of the improvement; and as the streets and thoroughfares of a great city, such as Brooklyn is, are in constant use by passengers, during the night as well as the day, the corporation are bound to avert these dangers by special precautions, such as signal lights and barriers, and even more than these, should they prove inefficient to prevent disaster. The officers having charge of the sewer excavation did nothing of the kind. The men threw the earth upon the side-walk and there left it, and this act supplemented by the excavation inside the adjoining lot, produced the result of which the plaintiff has just ground to complain.

The first request of the defendant to the court to charge the jury proceeds upon the idea that the caving in of the side-walk was the cause of the injury, and unless the city had notice of it, actual or presumptive, it is not responsible. The caving in of the side-walk doubtless aggravated and perhaps contributed to the injury. But it was not its primary cause, as I have endeavored to show, and therefore I think the court were right in declining so to instruct the jury. The law of the road, to which the defendant referred in the second request to charge, refers exclusively to travelers in carriages meeting upon a public highway, and does not regulate the conduct of persons passing over the side-walks of a city.

The business of the plaintiff, it appeared, was that of putting up gas and calcium lights, at the time of the accident; and he testified that he was for a year thereafter unable to attend to his ordinary business. He was then asked by his own counsel what was his net income the year preceding the injury. This inquiry was objected to by the defendant's counsel. The objection was overruled and the defendant excepted. The loss of his services to the plaintiff certainly was the proper subject of proof, but it would have been of no value unless accompanied by some evidence to show what they were worth. I see no other way of doing this so cer-

tainly and effectually as by showing the net income of the plaintiff for services for the preceding year. This received income was a fact, and although inconclusive, yet it afforded some data from which the jury might estimate the amount of the loss. Suppose that in place of working for himself, the plaintiff had been employed by others during the previous year at a fixed compensation, it would have been competent for him to prove how much that fixed compensation was. In principle there is no difference between the two cases. Indeed where the damages are for the loss of services, I see no evidence so unobjectionable and so reliable as that which shows how much the party was earning from his business, or realizing from fixed wages, at the time to which the loss refers.

The judgment of the city court should be affirmed, with costs.

[Kings General Term, February 8, 1864. *Brown, Scrugham* and *Lott,* Justices.]